# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 17-1926V**
**Filed: May 7, 2026**

|  |  |
|---|---|
| AMANDA TRIPP,<br><br>           Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>           Respondent. | Special Master Horner |

*Verne E. Paradie, Jr., Paradie, Rabasco & Seasonwein, Lewiston, ME, for petitioner.*
*Madelyn Weeks, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On December 12, 2017, petitioner, Amanda Tripp, filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that her receipt of an influenza ("flu") vaccination on March 21, 2016, caused her to suffer ataxia, speech difficulties, abnormal mental status, and severe weakness, diagnosed as a post-vaccination cerebellitis. (ECF No. 1.) A judgment was entered dismissing the case on September 16, 2025. (ECF No. 113.) Petitioner now moves for an award of attorneys' fees and costs in the total amount of $83,305.67. (ECF Nos. 109, 116, 123.) For the reasons discussed below, I award attorneys' fees and costs in the reduced amount of $82,221.80.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

## I.    Procedural History

As noted above, this case was initially filed in December of 2017.  It took petitioner about a year to collect and file her medical records.  Respondent then filed his Rule 4 Report, recommending against compensation in February of 2019.  The parties exchanged expert reports, and an entitlement hearing was held in July of 2023.

The undersigned issued a decision finding petitioner was not entitled to compensation in March of 2025.  Petitioner moved for review of that decision.  While that motion for review was pending, she also filed her initial motion for attorneys' fees and costs.  (ECF No. 109.)

At that time, petitioner requested a total of $82, 804.27 for attorneys' fees and costs, consisting of $54,363.63 in attorneys' fees and $28,440.74 in attorneys' costs.  (ECF No. 109-4.)  Of those costs, $4,000.00 was for the report of neurologist Dr. Nizar Souayah, who prepared only one report, and $21,125.00 for the work of neurologist Dr. Andrew Goodman, who prepared two reports and testified at the entitlement hearing.  Petitioner separately requested $2,770.23 in travel costs for both counsel and petitioner related to the entitlement hearing.  Counsel represented that the costs were borne by counsel and petitioner did not have any personal expenses for the litigation.  (ECF No. 109, p. 4.)

In response to this motion, respondent deferred to the court as to whether the statutory requirements for an award of attorneys' fees and costs had been met.  (ECF No. 110, pp. 2-3.)  Respondent questioned counsel's requested hourly rate, noted that expert invoices had not been produced, and contested counsel's use of business class airfare.  (*Id*. at n. 1.)  Otherwise, respondent requested that the court exercise its discretion with respect to what amount would constitute a reasonable award for attorneys' fees and costs.  (*Id*. at 5.)  Petitioner then filed a reply which sought to defend counsel's requested rate and also provided documentation for the costs associated with Dr. Goodman's work, showing that Dr. Goodman billed 42.25 hours at $500 per hour.  (ECF No. 111.)  However, petitioner indicated that counsel was unable to locate an invoice for Dr. Souayah's report.  (*Id*. at n. 1.)

Thereafter, in September of 2025, the Court of Federal Claims issued its opinion denying petitioner's motion for review.  (ECF No. 112.)  The court remanded the case to the undersigned for resolution of the pending motion for attorneys' fees and costs.  (*Id*. at 14.)

Subsequently, however, petitioner filed an amended motion for attorneys' fees and costs.  (ECF No. 116.)  The amended motion sought additional fees and costs relating to the motion for review.  (*Id*. at 1.)  Petitioner now sought a total of $59,892.78 in attorneys' fees and an additional $2,457.08 in travel costs associated with the oral argument on the motion for review.  (EF No. 116-3, pp. 7-8.)  Confusingly, however, whereas the initial motion did not include travel expenses within the request for attorneys' fees and costs, the amended motion did.  Thus, the total invoice of

$91,510.51 included with the amended motion appears to include the later travel costs, but not the initial travel costs of $2,770.23. (*Id.*) In response, respondent incorporated by reference the concerns stated in his initial response. (ECF No. 121, n. 1.) Otherwise, he again deferred to the court on what would constitute a reasonable amount for attorneys' fees and cost. (*Id.* at 5.)

Petitioner did not file any reply. However, on January 13, 2026, petitioner filed a second amended motion for attorneys' fees and costs. (ECF No. 123.) In the second amended motion, petitioner advised that the Chief Special Master had adjudicated counsel's hourly rate in another case and noted that this should result in a reduction in the fee request for this case. (*Id.* at 1 (citing *Graves v. Sec'y of Health and Human Servs.*, No. 23-1808V, 2026 WL 369062 (Fed. Cl. Spec. Mstr. Jan. 8, 2026)).) Based on that decision, petitioner's counsel requested the following rates: $300 per hour for work performed in 2017 and 2018; $315 for work performed in 2019; $330 for work performed in 2020; $345 for work performed in 2021; $375 for work performed in 2022; $390 for work performed in 2023; $415 for work performed in 2024; and $455 for work performed in 2025. (*Id.* at 4.) Applying these figures, petitioner's counsel requested a total for attorneys' fees and costs of $80,535.44, reduced from the prior request of $91,510.51. (*Id.* at 1.) The initial request for travel costs of $2,770.23 remained unchanged. (*Id.* at 4.) Thus, petitioner's final request for attorneys' fees and costs totals $83,305.67. Respondent did not file any response to the second amended motion.

## II.    Analysis

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." § 300aa-15(e)(1)(A)-(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). Here, although petitioner did not prevail, I am satisfied that this case was brought in good faith and that the petition had a reasonable basis. Respondent has not argued otherwise.

### a.  Reasonable Attorneys' Fees

In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348. It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the

reasonableness of both attorneys' fees and costs."). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Such applications should not include hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In reviewing fee applications, special masters need not engage in a line-by-line analysis. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Following petitioner's recalculation of attorneys' fees in her second amended motion, I am satisfied that the hourly rate requested by counsel is reasonable. *Accord Graves*, 2026 WL 369062. Moreover, I find that petitioner's recalculation answers the objection raised in respondent's motion responses regarding petitioner's requested rates. (ECF No. 110, n .1; ECF No. 121, n. 1.) Otherwise, respondent has not raised any objection with particularity (*see* Vaccine Rule 13(a)(3)) regarding the number of hours billed, and I find the total amount requested for attorneys' fees to be reasonable in light of the specific procedural history of this case. Accordingly, attorneys' fees are awarded in full based on the total amount requested in the second amended motion.

### b. Reasonable Attorneys' Costs

Attorneys' costs must also be reasonable and sufficiently documented. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Following petitioner's supplemental filing of additional invoices, two of respondent's objections remain.

First, respondent requests that petitioner be reimbursed only 50% of counsel's business class airfare. (ECF No. 110, n. 1 (citing *Antalosky v. Sec'y of Health & Human Servs.*, No. 16-701V, 2024 WL 3913517 (Fed. Cl. Spec. Mstr. July 18, 2024)).) Petitioner does not oppose this request. (ECF No. 123, n. 2.) This results in a reduction of $812.91. Additionally, the undersigned further observes that while counsel calculated his invoice total using a line item of $1,234.97 for his July 2025 flight, he provided a receipt documenting airfare of only $964.01. (*Compare* ECF No. 116-2, *with*

4

ECF No. 117-2, p. 8.)  Accordingly, I further reduced the requested costs by $270.96 to account for this discrepancy in the costs that have actually been documented.

Second, respondent objects to the lack of documentation for the cost of Dr. Souayah's report.  (ECF No. 110, n.1.)  Respondent is right to be concerned by the lack of documentation; however, there is also no question that Dr. Souayah did produce a report for this case.  Moreover, the amount requested is patently reasonable for production of an expert neurology report.  In fact, prior experience may suggest that the $4,000.00 requested is simply Dr. Souayah's retainer.  *Putnam v. Sec'y of Health & Human Servs*., No. 16-1273V, 2023 WL 7400712 (Fed. Cl. Spec. Mstr. Aug. 21, 2023) (discussing Dr. Souyah's retainer of $4,000.00); *Chevalier v. Sec'y of Health & Human Servs*., No. 15-001V, 2017 WL 490426, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017) (observing that Dr. Souayah had billed 35.5 hours at $425 per hour, totaling $15,087.50, to produce an expert report).  However, counsel is cautioned that I would not favorably view any attempt to belatedly introduce a supplemental request for additional expert costs, especially given that counsel ultimately opted not to rely on Dr. Souayah's opinion.  *See Putnam*, 2023 WL 7400712 (declining to reopen judgment where Dr. Souayah waited until over a year after judgment on fees had entered to present his full bill to counsel).

Respondent has not raised any other objection with particularity (*see* Vaccine Rule 13(a)(3)), and I find that the amount requested for costs is otherwise reasonable.

### III.    Conclusion

In light of the above, petitioner's motions (ECF Nos. 109, 116, 123) are **GRANTED**, with reductions, and petitioner is awarded a lump sum of **$82,221.80**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's counsel of record, Verne E. Paradie, Jr.'s IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[3] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).